WEDDINGTON *v.* STOLKIN ET AL.

[No. 18,277.   Filed June 5, 1952.   Rehearing denied October 10, 1952.]

*Gregg, Fillion, Fillenwarth & Hughes,* by *Arthur H. Northrup,* all of Indianapolis, for appellant.

*Silas Lipman* and *James C. Jay,* both of Indianapolis, for appellees.

CRUMPACKER, J.—The appellee Harold H. Stolkin sued the appellant Edward L. Weddington and one John E. Smith, co-partners doing business as E. & J. Paint and Body Shop, in the Marion Municipal Court upon a complaint which alleges in substance that on the 18th day of December, 1950, he delivered a 1947 Plymouth automobile, of which he was the owner, to the said Weddington and Smith for storage and that they then and there undertook to keep the same safely and securely and to redeliver it to him on demand for which service he agreed to pay them the sum of 45 cents per day. That on or about February 24, 1951, he demanded the return of said automobile, paid said partners the sum of $30.00 storage charges, as per agreement, but that said automobile had been so negligently kept and stored by them that the motor block had bursted and cracked and many accessories and parts had been removed and lost or stolen, all to his damage

in the sum of $450.00. The action was dismissed as to Smith and judgment went against Weddington alone in the sum of $385.00. Why Smith was made a party appellee to this appeal is not apparent from the record and therefore our use of the word "appellee" will be understood to refer to Stolkin only.

The evidence most favorable to the decision tends to prove that on December 18, 1950, one Joseph Laudig, an employee of the appellee, brought the automobile in question, "loaded on the back of a wrecker," to the appellant's place of business and told him that "Mr. Stolkin had sent the car up there to have the body repair work done" and wanted an estimate of the cost. As the appellant needed time to make such estimate the automobile was unloaded and left on the lot outside the appellant's shop and Laudig was told to come back later to get the estimate. When he returned the appellant told him that "it wasn't worth repairing and it might as well be pulled out" as it "was in such condition that they did not want to repair it." The appellee made no effort to remove the automobile from the appellant's lot and, notwithstanding several demands that he do so, he left it there, exposed to the weather, until February 24, 1951, when his agent Sam Smullan telephoned the appellant's place of business and "talked about $30.00 storage for the car." Two or three days later Laudig came to the appellant's lot and told some one apparently in charge thereof that he had come "to pick up the car." He was informed that the appellant "was holding it for a $30.00 storage bill." Laudig then went back to the appellee's office, got the money and upon his return to the appellant's place of business he paid the bill and had the car pulled away. The evidence as to its condition at this time is in sharp conflict but is entirely silent as to who

removed and carried away the missing parts and accessories.

The appellant contends that this evidence is not sufficient to sustain the decision of the court because it does not establish (1) the relationship of bailor and bailee between the parties, and (2) there being no evidence of a bailment contract he cannot be held liable, on the above facts, for damages to the automobile in question unless intentionally and willfully done by him, of which there is no evidence. The appellee says that these questions are not before this court because they can be presented only by a charge in the motion for a new trial that the decision of the court is not sustained by sufficient evidence. That the appellant's motion for a new trial, although stating that the decision is not sustained by sufficient evidence, proceeds to pinpoint evidentiary deficiencies and thereby limits the questions for review to those specifically indicated, among which the questions of the sufficiency of the evidence to establish a bailment contract and willful injury are not included.

For the sake of discussion we assume but do not decide that such is the law. The third specification of the motion for a new trial reads as follows:

"3. The Court's decision is not sustained by sufficient evidence for the reasons set forth in rhetorical paragraph No. 1 above, and for the following reason. Plaintiff's own witnesses testified that the automobile was not left with defendant for storage but for an estimate and that within a few days after delivery of the automobile defendant refused to give such an estimate and asked plaintiff to remove said automobile. Consequently, plaintiff left his automobile on defendant's lot at his own risk. Defendant could not therefore be liable for damages to said automobile unless defendant actually committed such damages. Not a

shred of evidence indicates that the damage was actually committed by defendant or his employees."

In our opinion this is sufficient to present both of the questions in dispute.

It is obvious that the appellee failed utterly to prove the case alleged in his complaint. He did not take his automobile to the appellant's place of business with any intention of entrusting it to the appellant for safe keeping and entered into no contract "then and there" to that effect. On the contrary he took said automobile there for a service which the appellant refused to perform. He left it there against the appellant's specific instructions and refused to remove it in disregard of several requests that he do so. After it had stood on the appellant's lot for two months exposed to the elements, as he well knew, he decided to remove it and he was met by a demand that he pay for the storage privilege he had pre-empted. This he paid under protest. Because the appellant designated this charge as "storage" and accepted payment thereof, the appellee insists he thereby assumed all of the responsibilities of a warehouseman or bailee and became charged with the duty of exercising ordinary care to return the appellee's car in the same condition in which it was received. In other words, having accepted the benefits of a warehouse or bailment contract he must assume the responsibilities attending such contracts.

In our opinion the evidence in this case discloses nothing more than a situation wherein the appellant furnished the appellee open air space on an unguarded lot in which he parked his car for two months and for which the appellant charged him $30.00. The liability of a person, who, for a monetary consideration, permits another to park his car on

his premises, for damages thereto, depends on whether a bailment is made, or whether merely space to park is leased. In deciding this question, the determining factor is usually whether or not possession and control is given to the owner of the premises. *Ex parte Mobile Light & R. Co.* (1924), 211 Ala. 525, 101 So. 177, 34 A. L. R. 921. It is essential to the .creation of the relation of bailor and bailee that there be a delivery of the property to the bailee. *Morrow, Inc.* v. *Paugh* (1950), 120 Ind. App. 458, 91 N. E. 2d 858. "In order to constitute a sufficient delivery in any given case, it is the general rule that there must be such a full transfer, either actual or constructive, of the property to the bailee as to exclude the possession of the owner and all other persons and give to the bailee, for the time being, the sole custody and control thereof." 6 Am. Jur., Bailments, §65, and cases cited. Also "In order to establish a bailment there must ordinarily be an acceptance of the article bailed, it being necessary to show either an expressed contract to take the article and later redeliver it, or circumstances from which such a contract can be implied; . . . . No legal responsibilities rest upon one who declines to become a bailee, . . . ." 6 Am. Jur., Bailments, §67, and cases cited. In our opinion the evidence in this case is not sufficient to show either a delivery of the automobile in controversy to the appellant or its acceptance by him. It was left with the appellant for an estimate of the cost of repairs only and with no intention of vesting in him the right of possession and control to the exclusion of the appellee for the time being. The appellant refused to make the estimate and requested that the automobile be removed from his premises which clearly indicates his refusal to become a bailee and assume responsibility as such.

From the whole record in this case we cannot escape the conclusion that when the appellant charged the appellee with $30.000 "storage" he did so with the intention of collecting rental for the space used by the appellee for the storage of his automobile during the time involved and with no thought of charging for services in the care and protection thereof. One who merely grants storage space, without assuming, expressly or impliedly, any duty or responsibility with respect to the care and control of the property stored, is a landlord and not a bailee. See Anno. 1 A. L. R. 396.

Who actually damaged the appellee's car is undisclosed and as the appellant owed no duty to the appellee as a warehouseman or bailee the decision of the court finds no support in the evidence.

Judgment reversed and cause remanded with instructions to grant appellant's motion for a new trial.

NOTE.—Reported in 106 N. E. 2d 239.